UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                Plaintiff,<br><br>v.<br><br>MARLON GUARDADO,<br>                Defendant. | CIVIL ACTION<br>NO.  4:12-cr-40004-TSH |

MEMORANDUM AND ORDER ON MOTION TO VACATE (Docket No. 103)

JULY 20, 2021

**HILLMAN, D.J.,**

Marlon Guardado ("Guardado" or "Defendant") moves to vacate his May 2014 felon-in-possession conviction under 18 U.S.C. § 922(g)(1) pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  In *Rehaif*, the Supreme Court held that the Government must prove the defendant knew they belonged to a category of persons whom the statute prohibits from carrying a gun when they were in possession to sustain a § 922(g)(1) offense.  After hearing and upon review, Guardado's motion under 28 U.S.C. § 2255 to vacate his conviction is ***denied***.

**Background**

On May 12, 2014, Guardado pled guilty to two counts of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts 1, 5); three counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts 2, 4, 6); and two counts of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922 (g)(1) (Counts

3, 7). He was sentenced to 96 months' imprisonment and 2 years of supervised release. (Docket No. 97).

*Motion to Vacate*

While in custody, Guardado timely filed this § 2255 motion to vacate his §922(g)(1) felon-in-possession conviction on June 22, 2020.[1] (Docket No. 103). He argues that: (1) the Court did not have jurisdiction to sentence him because the indictment did not allege knowledge of status as an essential element of the offense, in violation of his Fifth Amendment right to be charged by a grand jury and his Sixth Amendment right to notice of the charges laid against him; (2) his guilty plea was not made knowingly, intelligently, or voluntarily because the Court did not inform him that knowledge of status was an essential element of the offense, and so violated his Fifth Amendment right to due process; and (3) the indictment against him was defective because it did not inform him of the charges against him, and so violated his Sixth Amendment right to be informed of the charges against him.

---

[1] § 2255 petitions may only be filed by "a prisoner in custody under sentence of a court authorized by an Act of Congress." The Supreme Court has construed § 2255's custodial requirement liberally, finding that paroled prisoners are deemed to be in custody when the terms of release impose significant restrains on their liberty compared to the restraints on the general population. *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963). *See also U.S. v. Burdulis*, 209 F.Supp.3d 415 (D. Mass. 2016); *U.S. v. Collazo-Castro*, 660 F.3d 516, 522 (citing *U.S. v. Brown*, 117 F.3d 417 (11th Cir. 1997) for principle that convicted criminals on parole or supervised release are in constructive custody within the meaning of § 2255)). Guardado has satisfied this requirement because he was subject to the standard conditions of supervised release, with added requirements, when he filed this motion. (Docket No. 97). These include requiring Court permission to travel, allowing probation officers to visit him at home, cooperating with DNA collection, a ban on possession of firearms or dangerous weapons, and participation in substance abuse and mental health treatment and counseling. *(Id.)*.

*Rehaif v. United States*

18 U.S.C. § 922 (g) bars nine categories of individuals from possessing firearms, including convicted felons.[2] Knowing violations are punishable by fines or up to 10 years' imprisonment. § 924(a)(2).

On June 21, 2019, the Supreme Court held that in prosecutions under § 922(g) and § 924(a)(2), the Government must prove that "the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif* at 2194 (2019).

## Discussion

A. <u>The Motion to Vacate was Timely.</u>

Under § 2255(f), "[a] 1-year period of limitation shall apply to a motion under this section …". *See* 28 U.S.C. § 2255(f). Where a defendant is asserting that a right was made retroactive to cases on collateral review, the statute of limitations runs from the latest of "… the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review…". *See* 28 U.S.C. § 2255(f)(3).

Guardado timely filed his Motion to Vacate on June 22, 2020. *Rehaif* was issued on June 21, 2019. Under Fed. R. Civ. P. 6(a)(1)(C), if the last day of a period of time to file a motion falls on a weekend or legal holiday, the period continues to run until the next day which is

---

[2] The nine categories are: 1) convicted felons; 2) fugitives; 3) unlawful users or those addicted to controlled substances; 4) individuals adjudicated as a mental defective or who have been committed to a mental institution; 5) illegal aliens; 6) individuals with dishonorable discharges from the Armed Forces; 7) individuals who have renounced U.S. citizenship; 8) individuals subject to certain types of court orders; and 9) individuals who have been convicted of misdemeanor domestic violence.

neither a weekend nor a legal holiday. *Rules Governing Section 2255 Proceedings*, P.L. 94-426 (1976). Because June 21, 2020 fell on a Sunday, the applicable deadline to file a motion to vacate under *Rehaif* was Monday, June 22, 2020.

> B. <u>Defective Indictment did not Strip Court of Jurisdiction to Accept Defendant's Plea and Enter Judgment.</u>

Guardado's motion was procedurally timely, but fails on the merits. Guardado first argues that because *Rehaif* is a new substantive rule that applies retroactively on collateral review, the fact that he was never informed that knowledge of status was an element of the felon in possession statute at his plea colloquy shows that he did not violate that statute. (Docket No. 108 at 2). Further, Guardado contends that his indictment charged that he knowingly possessed a firearm and ammunition but not that he knew he was not allowed to possess a firearm because of his prior convictions. (*See id.*). He also claims that the Court lacked jurisdiction to enter judgment against him because of the missing knowledge of status element in his indictment. (*See id.* at 3). I begin with the jurisdictional challenge.

The Supreme Court and First Circuit have addressed and summarily dismissed Guardado's jurisdictional argument. *See U.S. v. George*, 676 F.3d 249, 259-60 (1st Cir. 2012) (clarifying that the use of the word "jurisdiction" when entering a judgment referenced a non-waivable defect, not the district court's power to adjudicate a case); *see also U.S. v. Cotton*, 535 U.S. 625, 630 (2002) (explaining that defects in an indictment do not deprive a court of its power to adjudicate a case). In *U.S. v. Burghardt*, a post-*Rehaif* decision, the First Circuit held that the district court had jurisdiction to accept the defendant's § 922(g) guilty plea where the judge, acting without the benefit of the *Rehaif* ruling, did not inform Burghardt that the Government would have to prove that he knew that he was a felon when he possessed the firearm in order to

sustain a conviction. *See* 939 F.3d 397, 400 (1st Cir. 2019). Applying *Burghardt*, in *U.S. v. Lara* the First Circuit held that the district court had jurisdiction to enter a judgment of conviction against a defendant whose pre-*Rehaif* indictment did not contain *Rehaif*'s knowledge of status element, the exact facts at issue here. *See* 970 F.3d 68, 85 (1st Cir. 2020). The First Circuit issued the same ruling in *United States v. Farmer*. 988 F.3d 55, 60-61 (1st Cir. 2021) (citing *Burghardt* and finding that "the government's failure to allege the scienter-of-status element in the indictment did not deprive the district court of jurisdiction").

Guardado did not raise either *Burghardt* or *Lara* in his discussion of why this Court lacked jurisdiction over his case due to the deficient indictment, even though both decisions were issued before he filed his memorandum in support of the motion to vacate on September 14, 2020 (*Farmer* was decided after briefing was complete). Since Guardado has not raised any novel argument that provides a compelling reason to deviate from binding precedent, I find that this Court had jurisdiction to accept Guardado's guilty plea and sentence him despite the deficient indictment.

C. <u>Defendant's Fifth and Sixth Amendment Arguments Fail the Plain Error Test.</u>

Having determined that this Court had jurisdiction to accept his plea and sentence Guardado, we now turn to his Fifth and Sixth Amendment arguments. Guardado claims that the defective indictment is a structural error that violated his Fifth Amendment right to be charged by a grand jury and to make a knowing, intelligent, and voluntary plea, and that the defective indictment and judgment violated his Sixth Amendment right to be informed of the charges against him. (Docket No. 108 at 6-9).

The failure to raise a claim at trial or on direct appeal results in a procedural default on collateral review unless the Defendant can demonstrate cause for the default and actual prejudice

5

from the error. *See Bousley v. U.S.*, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998). The First Circuit applies the plain error standard to clear or obvious errors (including structural errors) that were not raised before the district court, such as Fifth and Sixth Amendment challenges.[3] *See Lara*, 970 F.3d at 86. The plain error test has three elements: (1) there must be an error; (2) the error must be clear or obvious; and (3) the error must have affected the defendant's substantial rights. *See Molina-Martinez v. U.S.*, 136 S. Ct. 1338, 1343 (2016). To make a substantial rights showing, a defendant must ordinarily "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *See id.* (citing *U.S. v. Dominguez Benitez*, 542 U.S. 74, 76, 82, 124 S. Ct. 2333 (2004)). To show actual prejudice in cases which result in a plea rather than a trial, a petitioner "must show that there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also U.S. v. Windley*, 2020 WL 4583843, at *2 (D. Mass. Aug. 10, 2020). If the Defendant is unable to show prejudice, then they must demonstrate actual innocence to be successful. *See Bousley*, 523 U.S. at 622.

The first two prongs of the plain error test are not at issue. The Government concedes there was an error in its indictment, and that the error is clear and obvious, as neither the indictment nor the plea colloquy instructed Guardado that the Government bore the burden of proving at trial that he knew he was a felon when he sold the firearms and ammunition. Therefore, Guardado need only show prejudice, or that if the indictment had properly stated the

---

[3] The First Circuit has explained that errors are structural in only a limited set of circumstances such as when there was a complete denial of counsel, presence of a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and offering a defective reasonable doubt suspicion. *See U.S. v. Rivera-Rodriguez*, 617 F.3d 581, 604 (1st Cir. 2010). As I explain *supra,* see Part I.D, the Supreme Court has rejected the structural error argument.

Government's burden, there is a reasonable probability that he would not have chosen to go to trial rather than plead guilty. [4]

In *Burghardt*, the First Circuit denied a motion to vacate a § 922(g) felon in possession conviction because the record "reveal[ed] no reason to think that the Government would have had any difficulty at all in offering overwhelming proof that [the defendant] knew he had previously been convicted of offenses punishable by more than a year in prison." *See Burghardt*, 939 F.3d at 404.  In 2010, Burghardt pled guilty to three felony counts of selling controlled substances and one count of possessing a controlled substance with intent to sell in New Hampshire, and in 2011 he was convicted for robbery, also a felony in that state.  *Id*. at 400. According to the Presentencing Report ("PSR"), Burghardt received "2-10 years in state prison for two of the sale convictions, 7.5-15 years in state prison for the third sale conviction and the possession-with-intent-to-sell conviction, and 2-5 years in state prison for the robbery conviction." *Id*. at 404.  New Hampshire law required the judge to advise the defendant of the maximum sentence for the charged offense when entering a guilty plea. *See id*.  It appears that Burghardt actually served two years for his convictions on the drug charges, and at least 163 days for the robbery charge, so there was no clear evidence that he served over a year for any individual charge. *Id*., n. 4.  But the First Circuit explained that showing that a defendant served over a year for a single charge was not required to prove the defendant knew he had the requisite felon status when he violated the federal felon in possession statute where the defendant had received state sentences that were punishable by more than one year, "negating the inference that he has never been informed that he faced a sentence that would qualify under § 922(g). *Id*.

---

[4]   Guardado does not raise actual innocence, so it is not discussed.

Burghardt never challenged the PSR's account of his prior state convictions, nor did he provide any court records indicating that any state judge failed to apprise him of the maximum sentences, omissions which the First Circuit found "cut[s] against him." *Id*. at 405. Presented with no basis to discredit the criminal history in the PSR, the First Circuit determined that Burghardt's numerous prior sentences "would certainly have made clear to Burghardt the fact that that his offenses were punishable by more than a year in prison." *Id*. at 404. The fact that Burghardt received a three-level reduction under the Sentencing Guidelines for acceptance of responsibility also weighed against a finding that absent the *Rehaif* mens rea error, Burghardt would have risked trial. *See id*. The First Circuit concluded that Burghardt had failed to show that there was a reasonable probability that he would have gone to trial absent the error, and so there was no prejudice. *See id*. at 404-05.

Conversely, in *Guzman-Merced* the First Circuit vacated the defendant's felon in possession charge under § 922(g) for plain error. *See Guzman-Merced v. U.S.*, 984 F.3d 18, 21 (1st Cir. 2020). Guzman-Merced had been convicted of three prior offenses—one count of using violence against a public authority and two counts of carrying and using a firearm without a license— punishable by more than one year under the Puerto Rican law. *Id*. at 19-20. He was sentenced to "exactly one year of imprisonment on each, but served he served no time in prison because his sentence was suspended to a term of probation." *Id*. at 20. As in *Burghardt*, Guzman-Merced presented no evidence that the Puerto Rican sentencing court had failed to explain the maximum sentences available. *Id*. at 20. However, because Guzman-Merced was eighteen years old when he was convicted and sentenced for his state crimes, had a seventh-grade education and diagnosed learning disabilities, and because four years had passed between his prior convictions and his § 922(g) offense, the First Circuit reasoned that "one can see how a

8

person in his shoes could plausibly think that he had a decent shot of convincing at least one juror to reasonably doubt whether he know in 2017 that his prior offenses were punishable by more than one year."[5] *See id.* Even when the Court considered the "opportunity cost" to Guzman-Merced if lost the three-level sentencing reduction by declining to plead, it found there was a reasonable probability that he would have opted to go to trial rather than plead guilty had he been informed what the government needed to prove in order to convict him, and vacated his § 922(g) sentence. *See id.* at 21.

I find that the circumstances in Guardado's case are more akin to *Burghardt* than the special factors at play in *Guzman-Merced*. Guardado committed the underlying seven federal firearms and ammunition sales from May 2010 to February 2011, between the ages of 26 and 27. In the preceding decade, he had accumulated a long rap sheet in New York and Massachusetts, resulting in a criminal history score category of VI (the same as Burghardt). (*See* PSR ¶¶ 12-61). According to the PSR, he was convicted of at least nine felonies before the underlying conduct in his federal offense, all punishable by more than one year:[6] in 2003—two counts criminal sale of

---

[5] Like in *Burghardt*, the court also looked at the three-level reduction for acceptance of responsibility. *See Guzman-Merced*, at 21. The court reasoned that because the three-level reduction reduced the sentencing guidelines from 57-71 months to 41-51 months, and a successful defense and acquittal of the § 922(g)(1) charge would have resulted in no sentence at all, it is easy to see how the defendant might have thought the risk of a longer sentence would have been worth the potential gain of an acquittal. *See id.*

[6] My analysis of Guardado's prior criminal history is based upon the PSR prepared for his federal sentencing proceedings. Where the PSR lists the amount of time sentenced and/or served for each felony (whether in prison or as probation), I have added that information. Although Guardado objected to the inclusion of certain of these felonies as predicates for the Armed Career Criminal sentencing enhancement (which I did not apply), Guardado did not discuss whether any of his prior sentences show that he had the requisite knowledge of status under §922(g) in the pleadings for this matter beyond a bare assertion that "the record is devoid of evidence that Guardado knew of his prohibited status." (Docket No. 108 at 10). The Government painstakingly cited the maximum punishment available for each of Guardado's prior state felony convictions listed in the PSR, and Defendant has not disputed those representations. (Docket No. 133 at 2-3).

9

a controlled substance (4th degree, unspecified degree) (sentenced to one year) (N.Y.) (¶¶ 38-39); 2004—possession to distribute a Class A controlled substance (Mass.) (¶ 41); 2007—assault with a dangerous weapon (handgun) (Mass.) (¶ 46); 2008—assault and battery (Mass.) (served six months) (¶ 49); 2008—assault and battery with a dangerous weapon (bar stool) (Mass.) (served six months) (¶ 50); 2009—assault and battery (¶ 51) (Mass.) (served 60 days); 2010—2 counts assault and battery (Mass.) (¶ 51A) (suspended sentence of 1 year, violated probation, sentenced to 2.5 years); and 2011—assault and battery and witness intimidation (Mass.) (¶ 52) (sentenced to 1 year for assault and battery and six months for witness intimidation, sentences ordered to be served concurrently with 2010 sentence).  On March 11, 2012, his probation from a prior Massachusetts assault and battery conviction was revoked and he was sentenced to two and a half years in state prison.  (¶ 51A).  Guardado entered his guilty plea in federal court on October 13, 2013, less than two years later.  (Docket No. 72).  It does not appear that Guardado ever served or was sentenced to serve more than one year in prison for a single state offense before the underlying federal offense (he was sentenced to 2.5 years for the probation violation one month *after* the charged firearms sales in this case concluded in February 2011), but each of the state felonies listed above carry a maximum punishment greater than one year.

   Guardado has not carried his burden to show reasonable probability that he would not have pleaded guilty if he had been informed that the knowledge of status requirement applied because federal prosecutors would have been easily able to prove that Guardado knew he was a felon when he made the underlying firearm and ammunition sales from May 2010 to February 2011.  Under the Massachusetts Rules of Criminal Procedure, judges are required to advise defendants entering guilty pleas of their potential sentencing exposure to ensure their pleas are knowing, intelligent, and voluntary.  *See* Mass. R. Crim. P. 12(c)(3).  The United States asserts

without explanation that Guardado "entered guilty pleas for at least some, if not all, of the qualifying [state] felonies," which Guardado does not rebut.  (Because the PSR was prepared for the purpose of helping the Court calculate the defendant's criminal history, it does not distinguish between convictions arising from a plea versus convictions arising from trials.).  Absent any other evidence, the Court must rely on the United States' unrebutted assertion that Guardado pled guilty for at least some of his seven prior Massachusetts felony convictions, and therefore on several occasions he would have been informed by a judge in state court that the offense he was pleading guilty to carry a maximum length of more than one year.  Guardado has not provided court records or other evidence (such as prior appeals) showing that any of the Massachusetts judges who sentenced him failed to abide by R. 12(c)(3).  *See Burghardt* at 404.

To be sure, in some respects Guardado is similar to Guzman-Merced.  Guardado did not progress past the ninth grade and has an extensive and well-documented history of mental illness, including clinical diagnoses, suicide attempts, psychiatric hospitalizations, and substance abuse disorders.  There is evidence that he was also a victim of childhood abuse by a family member. (Docket No. 91 at 12-15; PSR ¶¶ 67, 75, 84-97).  However, Guardado is distinct from *Guzman-Merced* in three ways.  First, Guzman-Merced had diagnosed learning disabilities which could potentially render him incapable of understanding the criminal sentencing process or his own criminal record.  *See* 984 F.3d at 19-20.  Secondly, Guzman-Merced never spent "a single day" in prison, whereas Guardado had been repeatedly incarcerated for a wide array of violent and non-violent felonies before his federal offenses. Third, Guardado was in his early to mid-twenties during his prior state felony sentencings, whereas Guzman-Merced was seventeen, making his age and maturity less at issue.  Finally—though the parties have not created a clear record—whereas Guzman-Merced had only participated in one state felony plea proceeding

11

where a judge would have explained the maximum possible crimes against him before his broke the federal felon in possession statute, it appears that Guardado had been through several state felony plea proceedings before the seven weapons sales that formed the basis of the federal felon in possession case against him.

> D. The Supreme Court Rejected the Fourth Circuit's Structural Error Approach to *Rehaif*.

Lastly, Guardado argues that the Court's failure to advise him of the knowledge of status requirement prior during the plea colloquy constituted structural error, so he need not show prejudice under the plain error test to obtain relief. The Fourth Circuit vacated a guilty plea on direct appeal because of the court's failure to instruct the Defendant on the *Rehaif* knowledge of status requirement and has held that such a failure satisfies the third prong of the plain error test. *U.S. v. Gary*, 954 F.3d 194, 200-07 (4th Cir. March 23, 2020). When Guardado submitted his brief, *Gary* was already at odds with existing First Circuit post-*Rehaif* precedent applying the plain error standard—as well as precedent from six other circuits— that defendants like Guardado who fail to object to a *Rehaif* error at trial "must demonstrate prejudice in the form of "a reasonable probability that, but for this purported error, he would not have pled guilty."" *U.S. v. Burghardt*, 939 F.3d 397, 402-03 (1st Cir. 2019). Now the Supreme Court has repudiated *Gary* and held unequivocally that plain error review is the correct legal standard. *Greer v. United States*, 141 S.Ct. 2090, 2100 (June 21, 2021).[7]

---

[7] "As the Court's precedents make clear, the omission of a single element from jury instructions is not structural. A *Rehaif* error in jury instructions is therefore not structural. And it follows that a *Rehaif* error in a plea colloquy is likewise not structural. . . And unlike the errors that this Court has found structural, the omission of a single element from a plea colloquy does not "deprive defendants of basis protections without which a criminal [proceeding] cannot reliably serve its function as vehicle for determination of guilt or innocence.""

## Conclusion

Guardado has failed to demonstrate that the defective indictment or his plea colloquy which failed (understandably) to include the knowledge of status requirement instituted by *United v. Rehaif* prejudiced him under the First Circuit's plain error test. Given the litany of prior state felony convictions in his criminal record, as reflected by the PSR and unrebutted by Guardado himself, Guardado has not met his burden to show a reasonable probability that he would not have pled guilty to the felon-in-possession charges against him absent either error.

Guardado's §2255 to vacate his felon-in-possession conviction pursuant to *Rehaif v. United States* is **_denied_**.

**SO ORDERED.**

***/s/ Timothy S. Hillman***
**Timothy S. Hillman**
**DISTRICT JUDGE**
